MATTER OF BENGURIA Y RODRIGUEZ

In Adjustment of Status Proceedings

A-13367535

*Decided by Regional Commissioner March 14, 1967*

To be eligible for the benefits of section 2 of the Act of November 2, 1966, an applicant therefor must also come within the purview of section 1 of that Act; hence, applicant, whose only arrival in this country subsequent to January 1, 1959 occurred on September 26, 1965 at which time he was in possession of an immigrant visa and was inspected and admitted for permanent residence, is ineligible for the benefits of section 2 of the Act of November 2, 1966, since he never "originally arrived in the United States as a nonimmigrant or as a parolee" subsequent to January 1, 1959.

DISCUSSION: The District Director denied the application and certified the case to this office for review and final decision. The applicant is a native and citizen of Cuba, born July 12, 1923. He married a citizen of the United States on September 24, 1966.

Applicant was admitted to the United States at Laredo, Texas for permanent residence on September 26, 1965 upon presentation of an immigrant visa issued to him by the Vice Consul at the American Embassy of the United States at Mexico, D. F. on September 17, 1965. This was his first arrival in the United States subsequent to January 1, 1959.

In denying the application, which was filed with our Service on December 7, 1966, the District Director stated, in part, that applicant's first arrival in the United States occurred when he was admitted at Laredo, Texas on September 26, 1965. We notice his application for the immigrant visa states he was in the United States as a student from October 1939 to August 1942 and that he resided in Cuba from August 1942 to June 1965. However, for the reasons set forth below, the applicant's stay in the United States as a nonimmigrant student during this period is not relevant to the adjudication of this application.

On November 2, 1966, Public Law 89-732 was enacted. It is an Act to adjust the status of Cuban refugees to that of lawful permanent residents of the United States, and for other purposes. Section 1 of this Act reads as follows:

143

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien's admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States."

Section 2 of this same Act reads as follows:

"In the case of any alien described in section 1 of this Act who, prior to the effective date thereof, has been lawfully admitted into the United States for permanent residence, the Attorney General shall, upon application, record his admission for permanent residence as of the date the alien originally arrived in the United States as a nonimmigrant or as a parolee, or a date thirty months prior to the date of enactment of this Act, whichever date is later."

We believe it is evident from the above two quoted sections of the Cuban Refugee Act of November 2, 1966 that an applicant cannot be eligible for the benefits of section 2 if he first does not come within the purview of section 1 of this Act. Here the applicant has stated, and the record so shows, that his first arrival in the United States subsequent to January 1, 1959 occurred at Laredo, Texas on September 26, 1965 as described above.

Section 1 obviously refers to those Cuban refugees who were inspected and admitted as *nonimmigrants or paroled into the United States*. (Emphasis supplied). If this were not correct, then the provision in this section permitting adjustment of status to that of an alien lawfully admitted for permanent residence would be without purpose.

Section 2 of this Act begins with the phrase "In the case of *any alien described in section 1*" and goes on to include the language ". . . *as of the date the alien originally arrived in the United States as a nonimmigrant or as a parolee* . . .". (Emphasis supplied).

According to the record, the only arrival by this applicant subsequent to January 1, 1959 was as an immigrant in possession of a valid immigrant visa. He has never "originally" arrived in this country as a

nonimmigrant or parolee subsequent to January 1, 1959 as set forth in the statute.

The applicant did not submit a brief or other written statement for our consideration. After careful examination of the entire record, we find the facts in this case do not bring it within the purview of section 1. Hence, the applicant is not eligible for the benefits of section 2. Accordingly, we shall enter the following order:

*It is ordered* that the application be and the same is hereby denied.

145